UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Kenneth Seese,

    Plaintiff,

v.

Prudential Insurance Company of America,

    Defendant.

Civil No. 14-3286 (MJD/FLN)

**REPORT AND RECOMMENDATION**

---

Kate Westad for Plaintiff.
Ian Morrison for Defendant.

---

**THIS MATTER** came before the undersigned United States Magistrate Judge on Defendant Prudential Insurance Company of America's ("Prudential") motion to dismiss Counts IV and VI of Plaintiff's complaint (ECF No. 11). This matter was referred to the undersigned for Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. Order, ECF No. 15. For the reasons set forth below, the Court recommends that Defendant's motion to dismiss be **GRANTED in part** and **DENIED in part**.

## I. FINDINGS OF FACT

According to Plaintiff Kenneth Seese, Prudential is the issuer of a group long-term disability insurance plan known as the Carlson Companies Employee Benefit Trust ("the Plan"). Compl. ¶ 3, ECF No. 1. The Plan was issued to Carlson Companies and its employees. Carlson Companies, according to the Complaint, is a registered corporation within the State of Minnesota and has numerous divisions and subsidiaries, including Carlson Wagonlit Travel. *Id.* ¶ 4.

Plaintiff worked as a systems analyst for Carlson Wagonlit Travel until September 2011, when he became disabled and was no longer able to work. *Id.* ¶¶ 5, 9–10. According to Plaintiff, he

suffered from the following disabling conditions: severe chronic headache, severe chronic fatigue, depressed mood, chills/cold temperature, stiff neck, chronic neck pain and spasm, severe chronic decreased energy level, dizziness, chronic sleepiness, inability to work, inability to stay awake, inability to stand or sit for any extended period of time, inability to ambulate on a normal basis, substantial inability to focus and concentrate, and deficient short term memory. *Id.* ¶ 10.

Sometime after September 2011, Plaintiff filed a claim for long-term disability benefits under the Plan. *Id.* ¶ 12. On February 28, 2012, Prudential denied Plaintiff's claim for benefits because it determined that Plaintiff's medical evidence did not substantiate his disability. *Id.* at ¶ 14. Plaintiff appealed the denial, supplementing his claim with additional medical records. *Id.* ¶ 15. Prudential denied the appeal, determining that Plaintiff was capable of performing the material and substantial duties of his occupation. *Id.* ¶ 16. Plaintiff filed a second "voluntary appeal" of this decision to Prudential's Appeals Review Unit. *Id.* ¶ 17. Again, Prudential denied the appeal for the same reasons it denied his first appeal. *Id.*

Plaintiff filed the present action on August 28, 2014, claiming that Prudential's actions in denying his claim for long-term disability benefits (1) violated the Employee Retirement Income Security Act ("ERISA"), (2) violated the Americans with Disabilities Act ("ADA"), and (3) constituted a breach of contract. *Id.* ¶¶ 20–58. Prudential now moves to dismiss Plaintiff's claims for breach of contract (Fourth Cause of Action) and violation of the ADA (Sixth Cause of Action) pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See* Mot. to Dismiss, ECF No. 11. Specifically, Prudential asserts that Plaintiff's breach of contract claim is preempted by ERISA and that Prudential is not a proper defendant under the ADA. *See* Def.'s Mem. in Supp. of Mot. to Dismiss 1–2, ECF No. 13. Plaintiff does not object to the dismissal of his breach of contract claim,

2

but he does oppose the dismissal of his claim under the ADA. *See* Pl.'s Opp'n Mem. 1, ECF No. 18.

## II. LEGAL STANDARD

In analyzing the adequacy of a complaint under Rule 12(b)(6), the Court must construe the complaint liberally and afford the plaintiff all reasonable inferences to be drawn from those facts. *See Turner v. Holbrook*, 278 F.3d 754, 757 (8th Cir. 2002). For the purpose of a motion to dismiss, facts in the complaint are assumed to be true. *In re Navarre Corp. Sec. Litig.*, 299 F.3d 735, 738 (8th Cir. 2002). Nevertheless, dismissal under Rule 12(b)(6) serves to eliminate actions that are fatally flawed in their legal premises and designed to fail, thereby sparing litigants the burden of unnecessary pretrial and trial activity. *See Neitzke v. Williams*, 490 U.S. 319, 326–27 (1989).

To avoid dismissal, a complaint must allege facts sufficient to state a claim as a matter of law and may not merely state legal conclusions. *Springdale Educ. Ass'n v. Springdale Sch. Dist.*, 133 F.3d 649, 651 (8th Cir. 1998). A plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A pleading must contain enough facts to state a claim for relief that is "plausible on its face," and a claim has facial plausibility only when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged. *Id.* at 570; *Ascroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plausibility standard is not akin to a "probability requirement," but it calls for more than a sheer possibility that a defendant has acted unlawfully. *Iqbal*, 556 U.S. at 678.

## III. CONCLUSIONS OF LAW

**A.     Fourth Cause of Action: Breach of Contract**

Plaintiff alleges in his Complaint that "Defendant has a contractual obligation under the Plan

to provide the full level of benefits to which Plaintiff is entitled." ECF No. 1 ¶ 39. Because Prudential has refused to provide benefits that Plaintiff claims he is entitled to, Plaintiff argues that Prudential has breached its agreement under the Plan. *Id.* ¶ 40. In response, Prudential asserts that Plaintiff's breach of contract claim is preempted by ERISA. ECF No. 13 at 3. Plaintiff admits that he pled breach of contract in the alternative to his ERISA claim, and therefore he does not oppose dismissal. ECF No. 18 at 1. Accordingly, the Court recommends that Plaintiff's Fourth Cause of Action (breach of contract) be dismissed with prejudice. *See* 29 U.S.C. § 1144(a) (stating that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employment benefit plan" governed by ERISA); *Fink v. Dakotacare*, 324 F.3d 685, 689 (8th Cir. 2003) (stating that the Eighth Circuit has "consistently held that state law causes of action are completely preempted by ERISA when they arise from the administration of benefits"); *see also Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41 (1987) (finding state law claims for breach of contract preempted by ERISA).

**B.      Sixth Cause of Action: ADA**

    **1.      Place of public accommodation**

Prudential argues that Plaintiff's claim under Title III of the ADA must be dismissed as a matter of law because Prudential is not a "place of public accommodation" under Title III. Def.'s Reply Mem. 7–8, ECF No. 20. The Court disagrees.

Title III of the ADA ensures that "[n]o individual shall be discriminated on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodation of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." *Id.* § 12182(a). According to the statute, "[t]he

4

following private entities are considered public accommodations . . . if the operations of such entities affect commerce— . . . (F) a laundromat, dry-cleaner, bank, barber shop, beauty shop, travel service, shoe repair service, funeral parlor, gas station, office of an accountant or lawyer, pharmacy, *insurance office*, professional office of a health care provider, hospital, or other service establishment." *Id.* § 12181(7) (emphasis added).

Prudential argues that it should not be considered a "place of public accommodation" because the benefits it offers through the Plan are only available to employees of Carlson Companies, not to the general public. ECF No. 20 at 8. In other words, because someone could not "walk in off the street" and request to be a plan participant, Prudential claims that it is not a proper defendant to Plaintiff's Title III claim. *Id.* Conversely, Plaintiff argues that an insurance policy is plainly a "service" of an "insurance office," and is therefore covered under Title III. ECF No. 18 at 7. Therefore, according to Plaintiff, an insurer may not discriminate in its coverage decisions, regardless of whether the relevant policy is sold directly to the public or made available through an arrangement with an employer. ECF No. 18 at 7.

It does not appear that the Eighth Circuit has addressed the question of whether an insurance company that administers an employer-provided disability plan is a "place of public accommodation" under Title III of the ADA. Other courts, however, have addressed this issue. For example, in *Weyer v. Twentieth Century Fox Film Corp.*, 198 F.3d 1104, 1115 (9th Cir. 2000), the Ninth Circuit held that "an insurance company administering an employer-provided disability police is not a 'place of public accommodation' under Title III." In so holding, the court relied on the Third Circuit's decision in *Ford v. Schering-Plough Corp.*, 145 F.3d 601 (3d Cir. 1998). In *Ford*, the court stated, "The plain meaning of Title III is that a public accommodation is a place . . . . Since

5

[plaintiff] received her disability benefits via her employment at Schering, she had no nexus to MetLife's 'insurance office' and thus was not discriminated against in connection with a public accommodation. . . . Ford cannot point to these terms ['goods, services, facilities, privileges, advantages, or accommodation'] as providing protection from discrimination unrelated to places." 145 F.3d at 612–13; *see also Weyer*, 198 F.3d at 1115 (quoting *Ford*). *Weyer* additionally relied on similar language from the Sixth Circuit's decision in *Parker v. Metropolitan Life Ins. Co.*, 121 F.3d 1006 (6th Cir. 1997): "While we agree that an insurance office is a public accommodation as expressly set forth in § 12181(7), plaintiff did not seek the goods and services of an insurance office. Rather, Parker accessed a benefit plan provided by her private employer and issued by MetLife. A benefit plan offered by an employer is not a good offered by a place of public accommodation. . . . [A] public accommodation is a physical place . . . ."

From the *Weyer* decision, it is clear that certain circuits interpret Title III to require that individuals must obtain goods or services from a physical structure in order to avail themselves of the protections provided by the ADA. The Court, however, is not persuaded that the statute is so limited. Indeed, adopting the Third, Sixth, and Ninth Circuits' reasoning would yield irrational results. For example, such an interpretation would suggest that a store may not discriminate on who can purchase the goods or services sold on its physical premises, but the store would be free to discriminate in the provision of goods and services purchased online or in a catalog. In other words, while a clothing company could not refuse to sell a sweater to a disabled person who visited its physical retail location, it could freely refuse to sell the sweater to that same disabled person if she placed an order online. The Court, therefore, rejects any interpretation of Title III that limits its scope to only physical places of public accommodation. *See, e.g.*, *Carparts Distribution Ctr., Inc.*

*v. Auto. Wholesaler's Ass'n of New England*, 37 F.3d 12, 19 (1st Cir. 1994) (stating that Congress contemplated Title III to include "providers of services which do not require a person to physically enter an actual physical structure"); *Morgan v. Joint Admin. Bd.*, 268 F.3d 456, 459 (7th Cir. 2001) (rejecting an interpretation of "public accommodation" to require a physical site, such as a store or hotel); *Lewis v. Aetna Life Ins. Co.*, 982 F. Supp. 1158, 1164–65 (E.D. Va. 1997) (holding that "Title III prohibits an insurer from discriminating on the basis of disability in the insurance policies that it offers, whether these policies are purchased at the office of the insurer or otherwise"); *see also Parker*, 121 F.3d 1006 (Merritt, J., dissenting) ("The Court limits § 12182(a) 'to physical access to an office,' rejecting the contrary view of the other circuit and district courts that have decided the issue, as well as rejecting the Department of Justice and the EEOC view that employer group health insurance is covered.").

Some courts, however, have concluded that even if one interprets the public accommodation requirement to include locations other than simply a physical site, an insurance plan that is offered only to employees of a company, and not the public at large, is not covered by the ADA. Such coverage plan is a "private deal, not a public offering." *See, e.g.*, *Morgan*, 268 F.3d at 459. The Court finds this rationale unpersuasive. There is no language in Title III of the ADA that requires an individual to purchase the insurance policy directly from an insurer, rather than through an intermediary, in order to acquire the ADA's protections against discriminatory practices. Indeed, Title III of the ADA states:

> It shall be discriminatory to subject an individual . . . on the basis of a disability . . . , directly, *or through contractual, licensing, or other arrangements*, to a denial of the opportunity of the individual . . . to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity.

42 U.S.C. § 12182(b)(1)(A)(i) (emphasis added). By the plain language of the statute, an insurer

7

may not discriminate in the coverage that it offers, regardless of whether that policy was made available directly by the insurer or via an individual's employer pursuant to a contractual arrangement. *See Lewis v. Aetna Life Ins. Co.*, 982 F. Supp. 1158, 1165 (E.D. Va. 1997).

Consequently, the Court concludes that Plaintiff has adequately alleged a discrimination claim under Title III of the ADA as Prudential is a "place of public accommodation."[1]

### 2. The ADA's safe harbor provision

Prudential additionally argues that even if it is determined that it is a proper defendant to Plaintiff's ADA claim, the claim should nevertheless be dismissed pursuant to the ADA's safe harbor provision. ECF No. 13 at 7–8. The Court disagrees.

The "safe harbor" provision of the ADA states that the requirements of the ADA shall not be construed to prohibit or restrict:

(1) an insurer, hospital, or medical service company, health maintenance organization, or any agent, or entity that administers benefit plans, or similar organizations from underwriting risks, classifying risks, or administering such risks that are based on or not inconsistent with State law; or

(2) a person or organization covered by this chapter from establishing, sponsoring, observing or administering the terms of a bona fide benefit plan that are based on underwriting risks, classifying risks, or administering such risks that are based on or not inconsistent with State law; or

(3) a person or organization covered by this chapter from establishing,

---

[1] Plaintiff additionally argues that Prudential is a proper defendant under Title I of the ADA. Title I states, "No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). The parties dispute whether Prudential is a "covered entity" under the statute. Because the Court concludes that Plaintiff has adequately alleged a claim under Title III of the ADA, the Court declines to address whether Prudential is a "covered entity" under Title I.

> sponsoring, observing or administering the terms of a bona fide benefit plan that is not subject to State laws that regulate insurance.
>
> Paragraphs (1), (2), and (3) shall not be used as subterfuge to evade the purposes of subchapter[s] I and III.

42 U.S.C. § 12201(c). In arguing that Plaintiff's ADA claim is barred by the safe harbor provision, Prudential relies on the Eighth Circuit's decision in *Krauel v. Iowa Methodist Medical Center*, 95 F.3d 674 (8th Cir. 1996). In *Krauel*, the plaintiff participated in an employee medical benefits plan through her employer. 95 F.3d at 675. After attempting to become pregnant naturally for over one year, the plaintiff visited a fertility clinic where she received fertility treatments. *Id.* at 676. One of these treatments resulted in her pregnancy. *Id.* Pursuant to the benefit plan's coverage scheme, the defendant paid for the plaintiff's laparoscopy, pregnancy, and delivery expenses. *Id.* The plan, however, excluded coverage for the treatment of infertility problems and therefore, the defendant denied coverage for the plaintiff's fertility treatments. *Id.* Plaintiff brought suit, alleging that her employer's denial of insurance coverage for fertility treatments violated the ADA. *Id.* In affirming the dismissal of the plaintiff's claim, the court found that the ADA's safe harbor provision barred her claim because the plan was not being used as a subterfuge to evade the purposes of the ADA. *Id.* at 678–79.

In *Krauel*, however, the plaintiff challenged as discriminatory the defendant's general decision to classify infertility treatments as a class of treatments that were not covered by the plan. The decision to cover certain pregnancy treatments but not fertility treatments was one of risk determination, a decision that falls within the ADA's safe harbor provision. Unlike the plaintiff in *Krauel*, Plaintiff in the present case does not allege that Prudential's general refusal to cover certain medical treatments is a violation of the ADA. Rather, Plaintiff merely claims that Prudential's

9

decision to deny him long-term disability benefits, based on the facts of his specific case, was a discriminatory decision under the ADA. *See, e.g.*, ECF No. 1 ¶ 57 ("By denying disability benefits to Plaintiff for the varying and changing reasons as Defendant has done here, it has discriminated against Plaintiff on the basis of his disability in violation of the [ADA]."). It is possible that Prudential's decision to deny Plaintiff's application for benefits constituted underwriting or classifying risks, in which case the ADA's safe harbor provision would preclude Plaintiff's claim. *See* 42 U.S.C. § 12201(c). However, it is also possible, based on the allegations in Plaintiff's Complaint, that the decision to deny coverage was not based on considerations of underwriting or classifying risks, in which case Plaintiff may be entitled to recover under the ADA.

Assuming that the facts alleged in the Complaint are true, the Court concludes that Plaintiff's claim under Title III of the ADA is not precluded by the ADA's safe harbor provision. Prudential's motion to dismiss Plaintiff's ADA claim must therefore be denied. *See Schaller Tel. Co. v. Golden Sky Sys.*, 298 F.3d 736, 740 (8th Cir. 2002) (stating that a motion to dismiss should be granted only when "it appears beyond doubt that the plaintiff can not prove any set of facts in support of his claim that would entitle him to relief").

## IV. RECOMMENDATION

Based upon all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that Prudential's motion to dismiss (ECF No. 11) be **GRANTED in part** and **DENIED in part** as follows:

1. To the extent Prudential seeks to dismiss Plaintiff's fourth cause of action (breach of contract), the motion should be **GRANTED**.

2. To the extent Prudential seeks to dismiss Plaintiff's sixth cause of action (discrimination under the ADA), the motion should be **DENIED**.

DATED: July 20, 2015                                    *s/Franklin L. Noel*
                                                        FRANKLIN L. NOEL
                                                        United States Magistrate Judge


Pursuant to the Local Rules, any party may object to this Report and Recommendation by filing with the Clerk of Court and serving on all parties, on or before **August 4, 2015**, written objections that specifically identify the portions of the proposed findings or recommendations to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within fourteen (14) days after service thereof. All briefs filed under the rules shall be limited to 3,500 words. A judge shall make a de novo determination of those portions to which objection is made.

Unless the parties are prepared to stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and cause to be filed by **August 4, 2015,** a complete transcript of the hearing.

This Report and Recommendation does not constitute an order or judgment of the District Court, and it is, therefore, not appealable to the Circuit Court of Appeals.